Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5045 | **DATE** | 4/29/2004 |
| **CASE TITLE** | Frank Calabrese vs. United States of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (8-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 3 0 2004 date docketed | |
| | Docketing to mail notices. | | | 15 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CW | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANK CALABRESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 5045 |
| | ) | Paul E. Plunkett, Senior Judge |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Frank Calabrese, a prior inmate in the Federal Bureau of Prisons ("BOP"), has filed suit against the United States ("Defendant") under the Federal Tort Claims Act ("FTCA") asserting negligence on the part of the medical staff employed at various BOP medical facilities. The United States filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons set forth below, the motion is denied.

### Facts

Unless otherwise noted, the following facts are either undisputed or deemed admitted because Calabrese failed to comply with Local Rule 56.1 ("LR 56.1"), a local rule which this Court enforces. *See Smith v. City of Chicago,* 2002 WL 1770532 (N.D. Ill. Aug. 1, 2002). Calabrese was an inmate in BOP custody between approximately July 1997 and February 2000. (Def.'s LR 56.1(a) Stmt. ¶ 1.) During this period, he was housed in three different correctional facilities: Metropolitan Correctional Center in Chicago ("MCC"), FCI Milan in Milan, Michigan ("FCI") and FCC Coleman in Coleman, Florida ("FCC"). (*Id.* ¶ 2.) On October 20, 1997, while at MCC, Calabrese saw

/5

physician's assistant Maria Velazquez and complained of numbness in his left knee and difficulty in raising his left knee. (*Id.* ¶ 4.) After examining Calabrese, Velazquez referred him to an orthopedic consultant. (*Id.* ¶ 5.) Velazquez also referred him to a pharmacist for a knee brace and requested an x-ray of the lumbar area and the left knee joint. (*Id.*) Velazquez advised Calabrese to return if his pain persisted. (*Id.*)

On October 23, Calabrese saw physician's assistant Kathy Muller and complained of continuing lower back pain and knee pain. (*Id.* ¶ 6; Pl.'s Response to Def.'s LR 56.1(a) Stmt. ¶ 6; Def.'s Ex. 3.) Calabrese saw Muller again on October 24 and October 30 and complained of lower back pain, left leg numbness and a decrease in the size of his left thigh. (Def.'s LR 56.1(a) Stmt. ¶ 7; Pl.'s Ex. 1¶ 11.) On October 24, Muller restricted Calabrese from lifting weight in excess of twenty-five pounds. (Def.'s LR 56.1(a) Stmt. ¶ 8.) Calabrese saw various BOP physicians and other medical personnel throughout the two years following October 1997.[1] (*Id.* ¶ 9.)

On November 3, 1997, Calabrese saw another physician's assistant, Godfrey Asprer. Calabrese did not complain of leg or knee pain. (*Id.* ¶ 10.) On November 5, 1997, Calabrese sought treatment for a second-degree burn; he filled out an injury assessment form and did not describe any leg pain. (*Id.* ¶ 11.) On November 5 and 10 Calabrese saw physician's assistants L. V. Carrera and Gilbert Michel, respectively. (*Id.* ¶¶ 12, 13.) On neither occasion did he complain of any leg pain. (*Id.*)

---

[1] Defendant asserts that Calabrese did not complain of leg or knee pain again until September 21, 1999. Calabrese disagrees with this specific statement, but provides no cite to the record as required by LR 56.1(b)(3)(A). Normally, we would deem the statement admitted. However, Calabrese properly presents evidence in response to other LR 56.1(a) statements that he did make those complaints to BOP medical personnel between October 1997 and September 1999.

On November 14, 1997, Calabrese saw Dr. J. S. Cruz. The chronological record of medical care[2] does not indicate that Calabrese complained of leg pain, but in his affidavit, Calabrese states that he complained of numbness in his left knee and loss of muscle in his left leg and even lowered his pants to demonstrate the difference in muscle size of his right and left legs. (*Id.* ¶ 14; Def.'s Ex. 7; Pl.'s Ex. 1 ¶ 12.) Calabrese saw Velazquez the next day. (Def.'s LR 56.1(a) Stmt. ¶ 15.) Again, the chronological record of medical care does not indicate that he complained of leg pain, but Calabrese asserts in his affidavit that he complained of numbness in his left knee and loss of muscle in his left leg and again lowered his pants to demonstrate the difference in muscle size. (Def.'s Ex. 7; Pl.'s Ex. 1 ¶ 13.) Calabrese saw Velazquez again on November 17, 1997. (Def.'s LR 56.1(a) Stmt. ¶ 16.) He did not complain of leg pain.[3] (*Id.*)

Calabrese was transferred from MCC to the United States Penitentiary at Terre Haute, Indiana on December 4, 1997. (*Id.* ¶ 17.) As part of the prison transfer process, Calabrese had a medical examination and filled out a form regarding his medical history. (*Id.* ¶ 18.) In response to the question: "have you ever had or have you now . . . . cramps in your legs", Calabrese did not check any of the "yes," "no" or "don't know" boxes. (*Id.*) Calabrese gave his medical history to D. Lampling, R.N. (*Id.* ¶ 19.) The intake screening and medical history report does not indicate that Calabrese complained of leg or knee pain or numbness in his legs, but in his affidavit, Calabrese states that he did complain of those things to Lampling. (Def.'s Ex. 8; Pl.'s Ex. 1 ¶ 14.)

---

[2] A chronological record of medical care is a written chronology of a patient's symptoms, diagnoses, and treatments. Each entry is signed by the treating physician, physician's assistant or other medical staff person.

[3] Calabrese refers us again to his affidavit to support his assertion that he did complain about leg pain, but his affidavit contains no reference to a November 17, 1997 visit to Velazquez.

On December 17, 1997, Calabrese arrived at FCI. (*Id.* ¶ 20.) When filling out the medical history form as part of the medical intake process, he checked "no" when asked: "have you ever had or have you now . . . cramps in your legs". (*Id.* ¶ 21; Def.'s Ex. 9.) On December 18, Calabrese completed a medical and dental history form. The form listed a number of conditions and asked whether Calabrese had or has ever had any of them. (*Id.* ¶ 22; Def.'s Ex. 10.) The form also asked whether Calabrese had any "disease, condition, or problem not listed." (Def.'s Ex. 10.) Calabrese circled "no" and did not complain of any leg pain, knee pain or numbness in his legs. (*Id.*) On May 4, 1998, Calabrese saw physician's assistant Restituto Pomaloy. The chronological record of medical care does not indicate that Calabrese complained of leg pain, knee pain or numbness in the legs, but Calabrese asserts in his affidavit that he did make these complaints to Pomaloy. (Def.'s LR 56.1(a) Stmt. ¶ 23; Def.'s Ex. 11; Pl.'s Ex. 1 ¶ 16.) Calabrese saw physician's assistant E. Cruz on August 3, 1998, and physician's assistant Don Demerre on September 2, 1998. (Def.'s LR 56.1(a) Stmt. ¶¶ 24, 25.) On neither occasion did he complain of leg or knee pain. (*Id.*)

On June 2, 1999, Calabrese was transferred from FCI to the Federal Transit Center in Oklahoma City, where he saw chief nurse Robert Eaton as part of the medical intake screening. (*Id.* ¶ 26.) According to the medical intake screening report, Calabrese did not complain of leg pain, knee pain or numbness in his legs. (*Id.*; Def.'s Ex. 13.) In his affidavit, however, Calabrese says he did complain of numbness in his left knee and loss of muscle in his left thigh. (Pl.'s Ex. 1 ¶ 17.) Calabrese arrived at FCC on June 15, 1999, where he was given a medical intake screening. The medical intake screening report does not show that Calabrese made any complaints of leg pain, knee pain or numbness in his legs. (Def.'s LR 56.1(a) Stmt. ¶ 27; Def.'s Ex. 14.) Again, however, Calabrese states that he did complain of numbness in his left knee and loss of muscle in his left leg.

(Pl.'s Ex. 1 ¶ 18; Def.'s Ex. 14 (showing medical staff notations assigning Calabrese to bottom bunk, restricting amount of weight Calabrese could lift and restricting any prolonged standing).) On September 21, 1999, in preparation for transfer to a halfway house, Calabrese was given a medical evaluation. (Def.'s LR 56.1(a) Stmt. ¶ 28.) He was diagnosed with "atrophy of muscles of left thigh."[4] (*Id.*) This was the first time since October 1997 that Calabrese's medical records reflect any medical condition involving his leg. (*Id.*) On October 24, 2000, after his release from BOP custody, Dr. Kevin McCoyd, a neurologist to whom Calabrese's private physician, Dr. Joseph Nuzzarello, referred Calabrese, wrote a letter to Dr. Nuzzarello. (*Id.* ¶ 29.) In his letter, Dr. McCoyd discussed Calabrese's medical history and stated that Calabrese says he (Calabrese) "has been dragging his left leg" and that it "began several years ago." (*Id.*)

Calabrese filed a claim with the United States Department of Justice, Federal Bureau of Prisons, alleging that BOP negligently failed to treat and/or diagnose the cause of his left leg complaints. There are two receipt date stamps on the claim form, one dated January 22, 2002 (with a handwritten alteration to read January 23, 2002) and the other dated March 4, 2002. (*Id.* ¶ 30.) The claim filed in January was rejected because it was incomplete. (*Id.*; Def.'s Ex. 19.) Calabrese filed the claim again in March with the missing information. (Def.'s LR 56.1(a) Stmt. ¶ 30; Pl.'s Response to Def.'s LR 56.1(a) Stmt. ¶ 30.) On January 23, 2003, after an investigation, BOP denied Calabrese's claim, finding that he did not suffer any personal injury as a result of any acts or omissions of BOP employees. (Def.'s LR 56.1(a) Stmt. ¶ 31.) Calabrese then filed this action.

---

[4] The medical evaluation document also states that Calabrese has a "significant medical disorder, under good control and will need follow up medical care and supervision." (Def.'s Ex. 15.)

Defendant has filed a motion for summary judgment, arguing that Calabrese filed his BOP claim outside of the two-year statute of limitations period allowed by the FTCA.

**The Legal Standard**

We may properly grant Defendant's motion for summary judgment on the basis of a statute of limitations defense if: (1) the statute of limitations has run, in which case Calabrese's claim is barred as a matter of law; and (2) no genuine issues of material fact exist regarding the time Calabrese's claim accrued and the application of the statute to his claim. *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002). We view all evidence and draw all inferences in favor of Calabrese, the nonmoving party. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

**Discussion**

We first address Defendant's argument that Calabrese's affidavit (submitted as Plaintiff's Exhibit 1) should be disregarded because it is self-serving and not corroborated by other evidence in the record. While it is true that self-serving, uncorroborated and conclusory statements in an affidavit cannot defeat a motion for summary judgment, that is not what Calabrese has presented. *Cf. Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) (affidavit insufficient because not based on personal knowledge, contained details of only two incidents and therefore not evidence of widespread practice of police officer misconduct, and contained conclusions about racially motivated actions of police officers); *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) (affidavit insufficient because it made conclusions regarding defendant's state of mind). His

affidavit, based upon his personal knowledge, contains factual details of the complaints he says he made to various BOP medical personnel, including Velazquez, Cruz, Pomaloy and Eaton. These complaints, he says, were not properly documented. Disregarding the statements in his affidavit because they are not consistent with what was recorded in his medical records is contrary to the affidavit's purpose. This is an appropriate way for Calabrese to raise as an issue (important to a medical negligence claim) the fact that BOP medical personnel heard his complaints of leg numbness, leg pain and muscle atrophy but ignored them.

In addition, Defendant believes we should disregard Calabrese's affidavit because it suggests an implausible "story" – that BOP personnel in five different facilities failed to record his complaints of leg problems but apparently recorded everything else. (Def.'s Reply at 3 - 4.)[5] This "story" may be less credible than any Defendant may offer, but the summary judgment stage of litigation is not the time to make credibility determinations. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003) (discussing use of affidavit to defeat motion for summary judgment). Our court of appeals has found that a "nonmoving party's own affidavit can constitute affirmative evidence to defeat a summary judgment motion." *Id.* We also note that Rule 56 specifically contemplates the use of affidavits by a nonmoving party in deciding a motion for summary judgment. Fed. R. Civ. P. 56(e).

Moving to the merits, Defendant argues that we must grant its summary judgment motion because Calabrese failed to file his administrative claim within the FTCA two-year statute of limitations. We disagree. Under the FTCA, the "United States shall be liable . . . [with regard] to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for . . . punitive damages." 28 U.S.C. § 2674 (1994). The tort

---

[5] We assigned page numbers to Defendant's Reply.

claim will be barred "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b) (1994). To determine whether Calabrese's claim is timely, we must first determine when it accrued.

Following the Supreme Court's decision in *United States v. Kubrick*, 444 U.S. 111 (1979), our court of appeals has held that "[m]edical malpractice claims under the FTCA accrue when a plaintiff has discovered his injury and its probable cause even though he may be ignorant of his legal rights." *Massey*, 312 F.3d at 276 (citing *Green v. United States*, 765 F.2d 105, 107 (7th Cir. 1985) (internal quotations omitted). Defendant argues that Calabrese's claim accrued in October 1997, when he first complained to Velazquez about numbness in his left knee and pain in his left leg and Velazquez recommended a knee brace, x-rays and a consultation with a specialist. At the latest, argues Defendant, his claim accrued on September 21, 1999 when he was diagnosed with thigh muscle atrophy. Certainly at this point, says Defendant, Calabrese should have known that the failure of BOP's medical staff to address his repeated complaints of leg pain and decreasing thigh muscle size was a probable cause of the muscle atrophy.

Defendant relies on the *Massey* case in support of its position. In *Massey*, Massey was diagnosed with a hernia while incarcerated in federal prison. His repeated requests for surgery were ignored and his condition worsened. He eventually had surgery more than one year after his diagnosis. Massey's FTCA claim was barred because he filed it more than two years from the date he discovered his injury and its probable cause. *See Massey*, 312 F.3d at 279. Massey's claim accrued, said the court, when Massey's attorney (with Massey's approval) wrote a letter to the correctional institute's warden, stating that Massey's "hernia keeps growing, with no surgery scheduled" and that he (the attorney) was concerned that the correctional institute was violating

Massey's constitutional rights "in addition to placing [Massey's] life in serious jeopardy because of inattention to his medical needs." *Id.* at 274, 279. At that time Massey had "reason to suspect, and in fact did suspect, that the delay in performing his hernia operation was the source of his increasing physical distress." *Id.* at 279.

Calabrese argues that his claim accrued in October 2000 when, after having been released from BOP custody, he was told by Drs. McCoyd and Lussky, neurologists, that his left leg problems were the result of a demyelinating condition and that had the condition been treated properly, its progression could have been halted. (Pl.'s Ex. 1 ¶¶ 29-32.) According to Calabrese, prior to this time "he had no knowledge of the true neurological condition in his leg." (Response at 6.) Calabrese argues that his ability to know the cause of his injury was impeded by BOP medical staff statements that his leg problems were caused by low back pain and that no medical treatment was necessary.

Calabrese says that the *Massey* case involves such different facts from his case that its holding is inapplicable. He relies instead on *Wehrman v. United States*, 830 F.2d 1480 (8th Cir. 1987). In that case, Wehrman experienced throat and chest pain while in the care of Veterans Administration ("VA") hospitals. For twenty-two years, Wehrman received allegedly negligent medical treatment by VA medical staff. After consulting with a private physician, Wehrman underwent surgery for his condition, which was successful. In finding that Wehrman's claim did not accrue until after his treatment was complete, the court invoked the "continuing treatment" doctrine, which states that a plaintiff's cause of action does not accrue until the tortious continuing treatment ends. *Wehrman*, 830 F.2d at 1483.

Defendant rejects the applicability of the *Wehrman* case. It notes that it is an Eighth Circuit case, and therefore not binding on us. It also notes that the *Wehrman* court acknowledged that, in cases of medical malpractice where the alleged negligence consists of failure to take action, other courts, including the Seventh Circuit, focus on other factors, such as the deterioration of the condition and the gravity of the injury. *Wehrman*, 830 F.2d at 1484.

The facts of this case differ from those of *Massey* in important ways which make *Massey*'s specific holding, that Massey's claim accrued when his pain increased and he knew he was not receiving the necessary surgery, unsuited to Calabrese's situation. Calabrese was not diagnosed with a specific condition that all agreed required surgery, and was then denied that surgery. And even though Calabrese's situation is not identical to that of *Wehrman*, which involved negligent treatment where the medical staff affirmatively acted to address Wehrman's condition, we still find that case instructive. Calabrese, like Wehrman, could not know of his injury (that it was, in fact, a serious condition) and that its cause could be the treatment (or in this case, lack of treatment) he received from BOP medical staff until October 2000, when he visited with another doctor who diagnosed the serious condition and proposed a course of treatment.

Our finding here is consistent with the Seventh Circuit's decision in *Green v. United States*, 765 F.2d 105, 108-109 (7th Cir. 1985). In *Green*, our court of appeals adopted the approach used by the Ninth Circuit in medical malpractice cases that arise from the failure to treat. The court said that, in these cases, "the injury is not the mere undetected existence of the medical problem, but rather, is 'the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983) (emphasis in original).

In *Green*, Green had been treated at VA hospitals for oral cancer. Part of the medical care he received involved radiation therapy. One day, after having completed treatment at the VA hospitals, he was admitted to Cook County Hospital hemorrhaging from the mouth. Green underwent several operations during his two and one-half month stay and was released in July 1980. He was admitted to Cook County Hospital again in August 1980, where he underwent five major surgical procedures. He was diagnosed with osteoradionecrosis (death of bone tissue resulting from excessive exposure to x-rays or radium). His doctor explained the nature of the injuries and the fact that they were caused by the radiation therapy. *Id.* at 106.

Green did not file his administrative claim with the VA until October 1982. Although the court ultimately found that Green's FTCA claim was time-barred, it applied the *Augustine* court analysis articulated above. Green argued that he had been told by the VA that osteoradionecrosis was a side effect of radiation therapy and so assumed he was experiencing expected side effects. The court rejected his argument, saying that Green must have known the nature and cause of his injury when he underwent eight surgical procedures at Cook County Hospital and was told that the injuries were caused by the radiation therapy. *Id.* at 108.

Applying the *Augustine* and *Green* standard to Calabrese's allegations of failure to treat and diagnose his complaints of left thigh pain and muscle atrophy, we find that Calabrese's cause of action did not accrue for purposes of 28 U.S.C. § 2401(b) before October 2000. He did not know of his injury and its probable cause until he was diagnosed with a severe condition and informed by a physician that his condition could have been treated earlier and that such treatment could have halted the progression of the condition. Calabrese filed his administrative claim in March 2002, less than two years after his claim accrued and within the statute of limitations for FTCA claims.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is denied.

**ENTER:**

*[signature]*

**UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT**

DATED: **APR 2 9 2004**